UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CORDIS CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>ABBOTT LABORATORIES and ABBOTT<br>CARDIOVASCULAR SYSTEMS INC.,<br><br>Defendants. | Civil Action No. 07-2265 (JAP)<br>07-2477 (JAP)<br>07-2728 (JAP)<br><br><br>**CLERK'S OPINION GRANTING<br>IN PART AND DENYING IN PART<br>DEFENDANTS' MOTION<br>TO TAX COSTS** |
| WYETH and CORDIS CORPORATION,<br><br>Plaintiffs,<br><br>v.<br><br>ABBOTT LABORATORIES and ABBOTT<br>CARDIOVASCULAR SYSTEMS INC.,<br><br>Defendants. | Civil Action No. 07-5636 (JAP) |

This matter has come before the Clerk on the motion [Dkt. Entry 150] [1] of Defendants

Abbott Laboratories and Abbott Cardiovascular Systems Inc. ("Defendants," "Abbott") to tax

costs pursuant to Federal Rule of Civil Procedure 54(d) and Local Civil Rule 54.1.  Plaintiffs

Wyeth and Cordis Corporation ("Cordis") (hereinafter, collectively, "Plaintiffs") oppose this

motion.

---

[1]      The within motion appears on the docket of all four of the above-captioned cases
at different entry numbers.  Except where otherwise noted, the New Jersey references are to the
docket entries in Civ. A. No. 07-2265.

The underlying patent litigation has a rather complicated background, involving eight separate actions filed in this district and the District of Delaware.  The parties are well-aware of the factual and procedural histories and the Clerk presents just an abbreviated version of the procedural history that is relevant to this application.

In the first action, which was filed in this district on May 5, 2007 [Dkt. Entry1], Civ. A. No. 07-2265, Cordis alleged that the drug-eluting stent named XIENCE V (the "XIENCE V stent"), manufactured by Abbott, infringed U.S. Patent No. 7,217,286 (the "'7286 patent"), issued to Robert Falotico and Gerard H. Llanos and assigned to Cordis.

Filed soon thereafter in this district were three related suits, alleging that Abbott's XIENCE V stent infringed three other patents owned by Cordis or co-owned by Cordis and Wyeth: 1/ Civ. A. No. 07-2477, filed on May 29, 2007, alleging infringement of Cordis' U.S. Patent No. 7,223,286 (the "'3286 patent"); 2/ Civ. A. No. 07-2728, filed on June 12, 2007, alleging infringement of Cordis' U.S. Patent No. 7,229,473 (the "'473 patent"); and 3/ Civ. A. No. 07-5636, filed on November 27, 2007 by Cordis alone, alleging infringement of U.S. Patent No. 7,300,662 (the "'662 patent") but amended on February 8, 2008, to add Wyeth, a co-owner of that patent with Cordis, as a plaintiff.[2]  Abbot counterclaimed for declarations of invalidity and non-infringement.

Meanwhile, during the same time period, four patent cases were filed in the District of Delaware by plaintiffs Boston Scientific Corporation and Boston Scientific Scimed, Inc. (collectively, "BSC") against Cordis and Cordis' parent company, Johnson & Johnson, Inc.

---

[2]       The Clerk finds no order consolidating these matters on any of the four dockets but these actions were handled together, starting on January 7, 2008, when Magistrate Judge Bongiovanni ordered a status conference in connection with all four cases [Dkt. Entry 15].

(collectively, "J & J").  BSC, which was selling a private-labeled version of Abbott's XIENCE V

stent, the PROMUS Stent System, sought a judgment in the four consolidated Delaware cases

that the same Cordis patents at issue in this case were invalid: 1/ Civ. No. 07-333, filed on

May 25, 2007 (the '7286 patent); 2/ Civ. No. 07-348, filed on June 1, 2007 (the '3286 patent);

3/ Civ. No. 07-409, filed on June 22, 2007 (the '473 patent); and 4/ Civ. No. 07-765, filed on

November 27, 2007 (the '662 patent).[3]   Wyeth, the co-owner of the '662 patent, was also named

as a defendant in Civ. No. 07-765.  Abbott was not a party to the Delaware cases.  J & J

counterclaimed for infringement.

On December 20, 2007, J & J moved alternatively to dismiss or to transfer the

Delaware cases to the District of New Jersey, asserting that "Cordis previously filed mirror

image infringement actions against Abbott" in New Jersey.  [Civ. No. 07-333, Dkt. Entry 21].

The Delaware court denied the motion on January 25, 2008, finding that although the same

patents and products were at issue in both cases, plaintiff BSC was not a party to the New Jersey

action and neither the private nor the public interests weighed in favor of transfer.  Id. at Dkt.

Entries 26, 27.

Discovery proceeded in both forums and in fact, because the Delaware and New Jersey

cases were mirror images, discovery was coordinated in the two cases. This is evidenced by

an exchange that occurred between defense counsel and the Honorable Sue L. Robinson during

a discovery conference in the Delaware case on June 23, 2008:

> Tr. 5:1-4:  And the controversy relates, your Honor, to the pending case in New Jersey,
> where, as you may recall, there's parallel discovery that was under way.

---

[3]       References herein to "Civ. A. No." are to the New Jersey cases and those to
"Civ. No." are to the Delaware cases.  Except where otherwise noted, the Civ. No. docket entries
refer to entries in the seminal Delaware case, Civ. No. 07-333.

Tr. 5:10-6:11: The product that is accused in this case is the Promise Stent that is going to be marketed by Boston Scientific, but the real party in interest is Abbott, because Abbott makes the stent and it is the same as the Xience stent, and when the FDA approves it, they will both come out at the same time. From press reports, it appears to be fairly soon they're going to be launching the product.  And we had sued Abbott for patent infringement on the same four patents that are at issue in this case.  Those cases are pending before Judge Pisano in New Jersey.  This is a declaratory judgment action by Boston Scientific involving the same patents and the same product, and it is, in fact, the same product, because the Promise Stent is also accused in New Jersey. That is, Abbott is -- will be infringing when they deliver the stent to Boston Scientific, so we are suing Abbott on the same patents and the same products there.  Now, the discovery is being coordinated between the two cases, which makes sense. Initially, precisely the same discovery schedule was set up in both cases.  You had issued the schedule in this case first and then the Court in New Jersey adopted exactly the same schedule there.  The bulk of the discovery in the case is, of course, coming from Abbott, not from Boston Scientific.  They're simply going to be selling it.

[Civ. No. 07-333, Dkt. Entry 47].

Also, the protective order entered in the Delaware case provided that confidential information produced by BSC could be used by Cordis and Abbott in the New Jersey actions [Civ. No. 07-333, Dkt. Entry 55, ¶ 9] and the protective order in the New Jersey actions similarly provided that confidential information produced by Abbott could be used by Cordis and BSC in the Delaware actions [Civ. A. No. 07-5636, Dkt. Entry 32, ¶ 9; Civ. A. No. 07-2265, Dkt. Entry 147, ¶ 9].  The Delaware protective order preserved the parties' right to challenge the admissibility of documents, testimony and things produced in either litigation. Id.

In ruling on three summary judgment motions filed by BSC [Civ. No. 07-333, Dkt. Entries 256, 259, 261], and J & J's motion for partial summary judgment, id. at Dkt. Entry 265, the Delaware court granted BSC's motion for summary judgment of the invalidity of all four patents under 35 U.S.C. § 1112.  Id. at Dkt. Entries 362, 363.  Final judgment was entered in favor of BSC and against J & J and Wyeth on January 20, 2010.  Id. at 364.

4

By order of the same date, this Court entered judgment in favor of Abbott and against Cordis and Wyeth on all claims in the four New Jersey actions, granting collateral estoppel effect to the Delaware court's finding that the patents-in-suit involved in the New Jersey actions were invalid.  [Dkt. Entry 146].  The order further required that applications for costs be made within 90 days of the issuance of the mandate of the Court of Appeals for the Federal Circuit, should the Delaware ruling be appealed.  Id. ¶ 5.

J & J appealed to the Federal Circuit and Abbott participated *amicus curaie*.  The appellate court affirmed the Delaware decision on June 7, 2011 and issued its mandate on September 22, 2011. [Civ. No. 07-333, Dkt. Entry 374-1].

Within 90 days thereof, on December 21, 2011, Abbott filed its bill of costs, seeking costs in the total amount of $295,947.32, consisting of:  *pro hac vice* fees ($6,600.00); service fees ($831.00); fees for printed transcripts and videotapes ($128,815.20); and fees for exemplification and the costs of making copies ($159,701.12). [Dkt. Entries 150, 159].[4] Plaintiffs object to all categories of costs except for the service fees.

## I.   Standards for Awarding Costs

Abbott's motion is controlled by Fed. R. Civ. P. 54(d) (1), which provides that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs---other than attorney's fees---should be allowed to the prevailing party."

In patent cases, the definition of "prevailing party" is governed by Federal Circuit law, which defines that term as one who obtains relief on the merits of its claim that materially alters

---

[4]      Actually, Abbott originally requested total costs in the amount of $296,699.32, [Dkt. Entry 150-1], but reduced that total by $752.00 when it subsequently withdrew its request for the $552.00 cost of the March 21, 2007 Valla deposition and reduced requested fees of the videotaped Llanos and Sierkierka depositions by $100 each.  [Dkt. Entry 159 at 2, n.2].

the legal relationship between the parties by modifying its opponent's behavior in a way that directly benefits that party.  Manildra Milling Corp. v. Ogilvie Mills, Inc., 76 F.3d 1178, 1181-82 (Fed. Cir. 1996) (citing Farrar v. Hobby, 506 U.S. 103, 111-13 (1992)).

While the first inquiry of determining prevailing party status is a matter of Federal Circuit law, the second, i.e., that of whether and how much to tax, is a matter of regional circuit law.  Id. at 1183.  Therefore, Third Circuit law controls the Clerk's decision as to the types of and the amount of costs to be taxed.

In this Circuit, there is a strong presumption in favor of awarding costs to the prevailing party.  " 'Only if the losing party can introduce evidence, and the district court can articulate reasons within the bounds of its equitable power, should costs be reduced or denied to the prevailing party.' "  Reger v. Nemours Found., Inc., 599 F.3d 285, 288 (3d Cir. 2010) (quoting In re Paoli RR Yard PCB Litig., 221 F.3d 449, 468 (3d Cir. 2000)).

Despite the presumption favoring the prevailing party, the district court and Clerk may tax only those types of costs set forth in 28 U.S.C. § 1920:

> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 441 (1987).

More recently, the Supreme Court reiterated that § 1920 taxable costs are "limited to relatively minor, incidental expenses," and are "narrow in scope."  Taniguchi v. Kan Pacific

Saipan, Ltd., 132 S.Ct. 1997, 2006 (2012).  In Taniguchi, the Court interpreted the

"compensation of interpreters" provision in § 1920 (6) as allowing for the cost of oral translation

but not document translation.  While this specific subsection of § 1920 is not involved here,

the Clerk is cognizant of the Supreme Court's overriding concern with curbing taxable costs.

As a result of applying the above principles, a prevailing party's costs "often fall well

short of the party's actual litigation expenses."  In re Paoli, 221 F.3d at 458.  Moreover, despite

the presumption of granting costs to a prevailing party, that party must provide sufficient

information to carry its burden of showing that the costs sought fall within the limits of § 1920.

Romero v. CSX Transp., Inc. 270 F.R.D. 199, 201-202 (D.N.J. 2010).

In addition to Rule 54(d) and 28 U.S.C. § 1920, the Clerk's decision is guided by

Local Civil Rule 54.1, which "establishes the general procedures to be followed in those cases

where a party is entitled to recover costs" under § 1920.  Lite, N.J. Federal Practice Rules,

Comment 2 to Rule 54.1 (Gann 2014 ed.) at 245.

Abbott is the prevailing party in this matter and Plaintiffs do not contend otherwise.

The court's finding of invalidity of all the patents-in-suit materially altered the legal relationship

of the parties in a way that directly benefitted Abbott.  Additionally, Abbott has complied with

the procedural requirements of L. Civ. R. 54.1 and 28 U.S.C. § 1924 by timely filing and serving

a verified Bill of Costs with copies of invoices appended [Dkt. Entries 150, 151].  Therefore,

the Clerk will now examine the specific costs of which Defendants seek taxation, as outlined in

the Declaration of George C. Jones, Esq. ("Jones Decl.") [Dkt. Entry 151].

## II.　　Fees of the Clerk and Marshal, § 1920 (1)

### A.　Pro Hac Vice Fees

The first item appearing on Abbott's bill of costs is a $6,600.00 cost of *pro hac vice* fees,

which Abbott lists as a fee of the Clerk under § 1920 (1).  Jones Decl. ¶ 8.  This consists of

the charge for eleven out-of-state counsel to appear in the four separately filed cases at the rate of

$150.00 per attorney per case.  In support, Defendants rely upon this court's opinion in Church

& Dwight Co., Inc. v. Abbott Labs., Civ. A. No. 05-2142, 2009 U.S. Dist. LEXIS 58067,

at * 20-21 (D.N.J. July 8, 2009).  Defs.' Reply Br. at 2.

In the Church & Dwight case, this court summarily granted such fees without providing

a basis therefor.  Rather than adopting that holding, the Clerk has consistently denied *pro hac

vice* fees on the ground that the opponent should not have to pay for the movant's choice to be

represented by counsel not admitted to practice in this district.  See e.g., Warner Chilcott Labs

Ireland Ltd. v. Impax Labs, Inc., Civ. A. Nos. 08-6304, 09-2073, 09-1233, 2013 WL 1716468,

at *2-3 (D.N.J. Apr. 18, 2013). In so holding, the Clerk has parted company with the Eighth

Circuit and aligned himself with the Eleventh Circuit and other district courts within the Third

Circuit and beyond.

While a cogent analysis is lacking in both the Eleventh Circuit decision denying taxation,

Beck v. Prupis, 162 F.3d 1090, 1100 (11th Cir. 1998), aff'd on other grounds, 529 U.S. 494

(2000), and that of the Eighth Circuit favoring it, Craftsmen Limousine, Inc. v. Ford Motor Co.,

579 F.3d 894, 898 (8th Cir. 2009), the Clerk finds persuasive a recent Ninth Circuit opinion

disallowing *pro hac vice* fees.  In Kalitta Air L.L.C. v. Central Texas Airborne System Inc.,

741 F.3d 955, 957-58 (9th Cir. 2013), the court determined that the phrase "[f]ees of the clerk"

refers to those in 28 U.S.C. § 1914, i.e., those set by the Judicial Conference.   As the Judicial

Conference's fee schedule does not cover *pro hac vice* fees, such fees are not fees of the clerk,

within the meaning of § 1920 (1).  The court buttressed its holding by espousing the general

principle, embraced likewise by the Clerk, that § 1920 should be narrowly construed in the wake

of the Supreme Court's admonition in Taniguchi.  See also Awad v. Ziriax, No. CIV-10-1186-M, 2014 WL 1572804, at *1 (W.D. Okla. Apr. 17, 2014).

For these reasons, the Clerk denies all *pro hac vice* fees.

### B.  Service Fees

Abbott also seeks the $831.00 cost of serving subpoenas on third parties as a § 1920 (1) fee of the marshal.  Plaintiffs do not oppose taxation of this cost.

Section 1920 (1) explicitly authorizes taxation of the costs of just the "clerk and marshal." However, this Court has held that the fees of private process servers are taxable under the combined reading of § 1920 and § 1921, which allows the court to tax as costs the fees for serving a subpoena on a witness.  Ricoh Corp. v. Pitney Bowes Inc., Civ. A. No. 02-5639, 2007 WL 1852553, at *3 (D.N.J. June 26, 2007); Hurley v. Atlantic City Police Dep't, Civ. A. Nos. 93-260, 94-1122, 1996 WL 549298, at *8 (D.N.J. Sept. 17, 1996).  Based upon the above and Plaintiffs' lack of objection, the Clerk taxes the entire cost of the service of subpoenas or **$831.00** .

### III.   Fees for Transcripts and Videotapes, § 1920 (2)

Abbott requests the cost of printed transcripts ($86,437.59) and videotapes ($42,377.61) in the revised total amount of $128,815.20, pursuant to § 1920 (2).  Plaintiffs maintain that Defendants are entitled to no reimbursement at all in this category of costs.

### A.  Printed Transcript of Appellate Oral Argument

Abbott asserts that the $543.60 cost of the transcript of the appellate oral argument before the Federal Circuit is taxable under L. Civ. R. 54.1(g)(6)(C) because it was "required for the record on appeal."  Plaintiffs disagree, labeling this cost as one "for the convenience of Abbott's counsel."  Pls.' Br. at 6.  The Clerk agrees with Plaintiffs.

The cited provision of our local rules provides in full:

The cost of a reporter's transcript is allowable only (A) when specifically requested by the Judge, master, or examiner, or (B) when it is of a statement by the Judge  to be reduced to a formal order, or (C) if required for the record on appeal. Mere acceptance by the Court of a submitted transcript does not constitute a request.  Copies of transcripts for an attorney's own use are not taxable in the absence of a prior order of the Court.  All other transcripts of hearings, pretrials and trials will be considered by the Clerk to be for the convenience of the attorney and not taxable as costs.

L. Civ. R. 54.1(g)(6).

The controlling provision of § 1920, subsection (2), renders taxable the fees for printed transcripts which are "necessarily obtained for use in the case."

The question, then, is whether this transcript was necessarily obtained, e.g., for one of the purposes set forth in our local rule, or rather, whether it merely served the convenience of defense counsel.  Notwithstanding that "this Court's Judgment was expressly conditioned on the outcome of the Federal Circuit appeal, and the Court deferred consideration of Abbott's costs in these New Jersey cases until after that appeal," as Abbott correctly observes, Defs.' Reply at 2 (emphasis omitted), Abbott points out no purpose of this transcript.  While Defendants participated in the appeal to the Federal Circuit as *amicus curiae*, they did not need the transcript of the appellate oral argument for an appeal of the appellate ruling, which did not occur.  J & J requested a rehearing and a rehearing *en banc*, but the Federal Circuit denied that request.  Declaration of Donald A. Robinson, Esq. ("Robinson Decl.") ¶ 12.  Nor was the transcript necessary to memorialize the ruling of the Federal Circuit, which issued a written opinion in addition to its judgment.  [Dkt. Entry 149].  The Clerk conceives of no use of this transcript other than the convenience of Abbott's counsel.

Based upon the foregoing, the cost of this hearing transcript is denied in its entirety.

### B.   Printed Deposition Transcripts

In this application, Defendants request the costs of the printed transcripts and/or videotaping of the depositions of 57 witnesses.  Abbott seeks the $85,893.99 cost of the printed transcripts of one or more depositions of 55 of the witnesses, i.e., all but Harold Hopfenberg and Joseph Weidermann, for whom Abbott requests just videotaping fees.  Abbott attempts to specify the use of the transcripts in a detailed chart appearing at Jones Decl. ¶ 10.

As with the hearing transcript, taxation of the cost of deposition transcripts is conditioned upon their having been "necessarily obtained for use in the case," under § 1920 (2).  Our local rule, L. Civ. R. 54.1(g) (7), provides that "[i]n taxing costs, the Clerk shall allow all or part of the fees and charges incurred in the taking and transcribing of depositions used at the trial under Fed. R. Civ. P. 32," and further, that "[f]ees and charges for the taking and transcribing of any other deposition shall not be taxed as costs unless the Court otherwise orders."

Defendants' chart indicates the deponent's role, e.g., as an employee of one of the parties or an outside organization, as patent counsel or as an expert, and, in most cases, the use of the transcripts.  While the bulk of the transcripts were used in summary judgment briefing in the Delaware case, other listed uses are for inclusion in expert reports, the appendix of Abbott's *amicus* appellate briefing, in Markman briefs, and in "court filing(s)."  [Dkt. Entry 151 ¶ 10].

The crux of Plaintiffs' opposing argument is that Abbott is entitled to no such fees because the transcripts were not used at all in this case.  They were used in the Delaware case only.  No dispositive motions were filed and no trial was held in the New Jersey cases.  Pls.' Br. at 6.  Plaintiffs take issue specifically with the depositions of 12 BSC employees and experts

11

which they assert "were not even taken in this case, much less used in the trial of this case." Id. (footnote omitted). Furthermore, to the extent that L. Civ. R. 54.1(g) (7) allows for the taxation of depositions other than those used at trial, such taxation may be ordered by the district court only, and not the Clerk. Pls.' Sur-reply at 1-2 (citing Thabault v. Chait, Civ. A. No. 85-2441, 2009 WL 69332, at *3 (D.N.J. Jan 7, 2009)). Finally, Plaintiffs assert that should the Clerk be inclined to tax the depositions, deductions must be made for non-taxable services such as shipping, expedited delivery, and interest, shown in Plaintiffs' chart [Dkt. Entry 157-1, Ex. 1].

Defendants counter that the depositions were taken in the New Jersey cases. This is evidenced by the fact that the deposition cover sheets are captioned for both the Delaware and New Jersey cases. See, e,g, Civ. No. 07-333, Dkt. Entries 62, 64-7, 75-6, 81-6, 101, 120, 136-38, 152-56, 166, 238. Abbott attorneys for the New Jersey cases attended all of the depositions, including those of the BSC witnesses. While discovery in the two venues was not technically consolidated, it was coordinated by counsel for Abbott and BSC. That is, to save resources, witnesses were produced only once and counsel for Abbott and BSC coordinated their schedules to attend the depositions.[5]

Moreover, and most significantly, because the Delaware and New Jersey cases involved the exact same patents and were virtually mirror images, under the principle of collateral estoppel, this Court entered judgment based upon the dispositive motions made in the Delaware case. Defs.' Reply at 3-4. While Plaintiffs argue that the summary judgment briefing and appeal were technically in the Delaware cases, "this Court's Judgment was based on the

---

[5]     There is no issue of Plaintiffs being taxed twice for the same depositions. To the Clerk's knowledge, based upon the Delaware dockets, no taxation motions have been filed in the Delaware case.

summary judgment rulings in Delaware and Abbott's ability to seek costs here hinged on the Federal Circuit's determination of the Delaware appeal." Id. at 4 (emphasis in original).

Plaintiffs' argument that the transcripts were not used at trial is of no moment. The conflict between the "used at the trial" requirement of our local rule and the broader § 1920 (2) standard of "necessarily obtained for use in the case" was reconciled by the Third Circuit in In re Baby Food Antitrust Litigation, 166 F.3d 112, 138 (3d Cir. 1999). The circuit court held that a local court rule must yield to a federal rule where the two conflict, and there interpreted "necessarily obtained" as allowing for the taxation of the costs of depositions used in deciding summary judgment motions.

The Clerk determines that those transcripts which were used in connection with BSC's successful summary judgment motion in the Delaware case were "necessarily obtained for use in the case." They were taken in *this* case. Roney v. Illinois Dep't of Transp., No. 99 C 4941, 2007 WL 1100751, at *3 (N.D. Ill. Apr. 12, 2007) (transcripts of depositions taken and used in summary judgment motion in related state court case were also used in federal case, as evidenced by caption of both cases on cover pages of depositions); Cf. Caudill v. Sears Transition Pay Plan, No. 06-12866, 2011 WL 1595044, at *1 (E.D. Mich. Apr. 26, 2011) (inferring that depositions would have been "necessarily obtained for use in the case" had the depositions been noticed using the caption of that case, not just related case). The transcripts were used in *this* case. Simply put, the Honorable Joel A. Pisano applied the Delaware ruling in granting summary judgment to Abbott in this case and that ruling was based upon BSC's summary judgment motion.

In the Clerk's view, Plaintiffs' application of the law is overly technical, particularly considering the procedural history of these cases. It is hard to conceive how Abbott's counsel

could have proceeded differently.  The Delaware and New Jersey cases were not consolidated

because transfer of the Delaware cases to New Jersey was denied.  The New Jersey cases were

stayed, but only briefly, during the pendency of the Delaware transfer motion.  Therefore, the

discovery in the first-filed New Jersey cases proceeded along parallel lines with the Delaware

case.  As described by Cordis' counsel, the two cases were "mirror images."  Therefore, faced

with the very real likelihood that rulings in the BSC actions would be applied to their New Jersey

cases, in their vigorous representation of their client, counsel for Abbott attended the depositions,

including those of the BSC witnesses.  As Cordis' counsel explained to Judge Robinson, the

BSC and New Jersey actions involved the same patents and the same product.  The commonality

between the Delaware and New Jersey cases is further evidenced by the companion protective

orders, allowing for the joint use of confidential information produced in the two cases.

Most, but not all, of the deposition transcripts were used in BSC's summary judgment

briefing.  However, it is generally accepted by this Court and others that "[f]or the costs to be

taxable, the depositions need not have been used at trial, and must only 'appear reasonably

necessary to the parties in light of a particular situation existing at the times they were taken.'"

See, e.g., Thabault, 2009 WL 69332, at *7 (quoting Datascope Corp. v. SMEC, Inc., No. 81-

3948, 1988 WL 98523, at *3 (D.N.J. Sept. 15, 1988)); Smith v. Crown Equip. Corp., No. Civ.

A. 97-541, 2000 WL 62314, at *3 (E.D. Pa. Jan. 13, 2000).

Under this fairly broad standard, the Clerk taxes the cost of depositions of those

individuals whose significance is apparent from Abbott's chart and the dockets.  Most of the

remaining 20 deponents, whose testimony was not used in summary judgment, were either

experts or cited by experts, and/or they appeared on the losing parties' witness list in the

Final Pretrial Order in the BSC cases [Civ. No. 07-333, Dkt. Entry 360 at 45-50], or were noticed for deposition by Plaintiffs.

Regarding the expert testimony, in this patent case, "[i]t is reasonable to conclude that the depositions of the expert witnesses were necessarily obtained for use in this case because issues such as infringement, obviousness, anticipation, and indefiniteness would likely be resolved on the basis of their testimony, which would have to be studied and analyzed." Pharm. Resources, Inc. v. Roxane Labs., Inc., Civ. A. No. 03-3357, 2008 WL 2951173, at *3 (D.N.J. July 25, 2008).

Similarly, it is reasonable to tax the cost of depositions of persons appearing on the losing party's witness list "because the listing of those witnesses indicated both that the [party] might need the deposition transcripts to cross-examine the witnesses, and that the information those people had on the subject matter of th[e] suit was not so irrelevant or so unimportant that their depositions were outside the bound of discovery." Hall v. Siemens VDO Auto. Elec. Corp., No. 5:06-CV-1208-SLB, 2014 WL 1329553, at *2 (N.D. Ala. Mar. 31, 2014) (citing E.E.O.C. v. W & O, Inc., 213 F.3d 600, 621 (11th Cir. 2000)).

Likewise, depositions noticed by Plaintiffs, the losing parties here, would have appeared reasonably necessary to Abbott at the times they were taken. Plaintiffs' action alone of noticing the depositions would seem to mean that the depositions of these witnesses were considered by Plaintiffs to be necessary for use in the case. Janssen Pharm. N.V. v. Mylan Pharm., Inc., Civ. A. Nos. 03-6220, 03-6185, 2007 WL 925535, at *4 (D.N.J. Mar. 23, 2007); Diebold Enter. Sec. Sys., Inc. v. Low Voltage Wiring, Ltd., Civ. A. No. 13-cv-00505, 2014 WL 1874850 (D. Colo. May 9, 2014) (it would be inequitable to impose on prevailing party the cost of depositions that losing party noticed and took and therefore, believed were reasonably necessary at the time

they were taken); Lewis v. City of Chicago, No. 04 C 6050, 2012 WL 6720411, at *5 (N.D. Ill.

Dec. 21, 2012) (court taxed, as reasonably necessary to the preparation of the prevailing party's

case, the cost of depositions noticed and taken by the losing party, as well as those appearing on

that party's list of trial witnesses); U.S. ex rel. Lewis v. Walker, No. 3:06-CV-16, 2012 WL

1672992, at *2 (M.D. Ga. May 14, 2012) (depositions were noticed by the losing party and

therefore, it was necessary and appropriate for prevailing party to obtain the transcripts).

      With all of the foregoing in mind, Abbott's list of 55 deponents has been reduced to two

who do not satisfy any of the afore-mentioned criteria, i.e., Dennis Holtman, described as

"[o]utside consultant to Cordis on patent issues and former Johnson & Johnson employee," and

Mark Weishaar, labeled just as an "Abbott employee". Jones Decl. at 7, 10. These deponents do

not appear on either party's witness list in the BSC case. Their testimony was not cited in

summary judgment or Markman briefing or in expert reports or other court filings. The use of

these trancripts is unidentified and therefore, the Clerk cannot find that they were necessarily

obtained, as opposed to having been obtained merely for investigative purposes. Romero v. CSX

Transp., Inc., 270 F.R.D. 199, 202-03 (D.N.J. 2010). Accordingly, the costs of these transcripts

are denied.

      With regard to the taxable transcripts of the other 53 deponents, the Clerk must address

Plaintiffs' assertion that Abbott's request is over-inclusive because it asks for shipping,

expedited delivery and interest charges. Pls.' Br., Ex. 1. Plaintiffs are incorrect in stating that

Abbott seeks expedited delivery charges and interest. It does not. Defs.' Reply, Table A.

It does, however, attempt to recoup shipping charges on the basis of this Court's ruling in two

class actions in which counsel expenses were reimbursed from the common fund, not pursuant

to Rule 54(d) and § 1920, Oh v. AT & T Corp., 225 F.R.D. 142, 154 (D.N.J. 2004), and

In re Cendant Corp., Derivative Action Litig., 232 F. Supp. 2d 327, 343 (D.N.J. 2002). The distinction between taxable costs, on the one hand, and non-taxable costs derived from fee-shifting provisions other than Rule 54(d), on the other,  is explained in the Clerk's opinion in New Jersey Mfrs. Ins. Group v. Electrolux, Inc., Civ. A. No. 10-1597, 2013 WL 5817161, *2-3 (D.N.J. Oct. 21, 2013).  As noted therein, shipping charges, which are in the nature of attorney's fees, are not taxed in this district.  Id. at *6.

The Clerk customarily grants the reasonable cost of the original plus one ("O+1") copy or a "certified" copy of the transcript and fees of the reporter's appearance, and denies charges for litigation support services and other unexplained fees, such as administrative fees and "Expert Witness ( __ units)."  Id. at *8.

Absent an explanation of necessity, the often costly item of deposition exhibits is also denied as a convenience of counsel, who may have copies in hand already.  Id.  Furthermore, in this case, as recently found elsewhere, "Defendants do not identify those exhibits or even assert that the exhibit copies are essential to understanding any issues in the case.  The Court [or Clerk] has no way to know what the exhibits were, and thus cannot conclude that the exhibits were necessary, regardless of whether the costs sought are reasonable."  Bennett v. Unitek Global Services, LLC, Case No. 10 C 4968, 2014 WL 1322711, at *4 (N.D. Ill. Apr. 2, 2014).

The Clerk will tax a few other necessary fees charged by the court reporting services, i.e., $2.00 or $5.00 certification fee, morning ("Early Morning Pages") and evening deposition time ("Evening Pages," "late pp."), and medical/technical surcharges (an extra charge for heavily technical or medical testimony), to which Plaintiffs do not object.  The Clerk also notes that the per page transcript rates are not disputed by Plaintiffs.

In consideration of the above, the Clerk taxes the following deposition transcript costs, as listed in the Jones Decl. ¶ 10, for which invoices appear at Dkt. Entries 151-2, 151-3, 151-4:

| **Deponent** | **Taxed Amount** |
|---|---|
| **Steve Alderman**<br>Certified Copy | $   699.60 |
| **Aron Anderson, 3/23/09**<br>Original & One | $   795.60 |
| **Aron Anderson, 3/24/09**<br>Original & One | $   640.00 |
| **Anthony Andreacchi**<br>Certified Copy | $ 1,105.08 |
| **Juan Badimon**<br>Certified Copy | $   690.20 |
| **James Barry**<br>Certified Copy | $   664.31 |
| **Kendra Basler**<br>Certified Copy | $   251.75 |
| **Jennifer Bolton**<br>Certified Copy | $   423.40 |
| **Robert Clare, 1/21/09**<br>Certified Copy | $   952.00 |
| **Robert Clare, 1/22/09**<br>Certified Copy | $   673.20 |
| **Paul Coletti, 3/26/09**<br>Certified Copy | $   894.20 |
| **Paul Coletti, 3/27/09**<br>Certified Copy | $   860.20 |
| **Paul Consigny**<br>Certified Copy<br>Certification Fee | $   295.80<br>$       5.00 |

18

| **Deponent** | **Taxed Amount** |
|---|---|
| **Christopher Crall** | |
| Certified Copy | $    382.50 |
| Certification Fee | $        2.00 |
| | |
| **Nadine Ding** | |
| Certified Copy | $    804.90 |
| | |
| **Dennis Donohoe, 1/29/09** | |
| Originial & One | $  1,294.80 |
| Reporter Appearance | $      35.00 |
| | |
| **Dennis Donohoe, 1/30/09** | |
| Original & One | $  1,145.15 |
| Reporter Appearance | $      35.00 |
| | |
| **Carl Evens, 2/25/09** | |
| Certified Copy | $  1,224.00 |
| | |
| **Carl Evens, 2/26/09** | |
| Certified Copy | $    877.20 |
| | |
| **Robert Falotico, 2/12/09** | |
| Original & One | $  1,435.60 |
| Reporter Appearance | $    105.00 |
| | |
| **Robert Falotico, 2/13/09** | |
| Original & One | $  1,301.95 |
| Reporter Appearance | $      70.00 |
| | |
| **Robert Falotico, 4/02/09** | |
| Certified Copy | $  1,101.60 |
| | |
| **Robert Falotico, 4/03/09** | |
| Certified Copy | $  1,094.80 |
| | |
| **Robert Falotico, 6/02/09** | |
| Certified Copy | $  1,060.80 |
| | |
| **Brian Firth, 11/13/08** | |
| Certified Copy | $  1,023.40 |
| | |
| **Brian Firth, 11/14/08** | |
| Certified Copy | $  1,132.20 |

19

| **Deponent** | **Taxed Amount** |
|---|---|
| **Manish Gada** | |
| Certified Copy | $ 314.00 |
| Certification Fee | $ 5.00 |
| | |
| **George Gokel** | |
| Certified Copy | $ 952.25 |
| Evening Pages | $ 41.25 |
| | |
| **Judith Goldberg** | |
| Certified Copy | $ 705.25 |
| | |
| **Chad Hewitt** | |
| Certified Copy | $ 339.20 |
| | |
| **Syed Hossainy** | |
| Certified Copy | $ 360.40 |
| | |
| **Kristin King** | |
| Certified Copy | $ 1,140.75 |
| | |
| **Timothy Kiorpes, 1/13/09** | |
| Certified Copy | $ 1,181.10 |
| Medical/Technical Surcharge | $ 121.45 |
| | |
| **Timothy Kiorpes, 1/14/09** | |
| Original & One | $ 1,428.05 |
| Medical/Technical Surcharge | $ 105.00 |
| Reporter Appearance | $ 30.00 |
| | |
| **Gregory Kopia, 2/05/09** | |
| Certified Copy | $ 1,203.60 |
| | |
| **Gregory Kopia, 2/06/09** | |
| Certified Copy | $ 958.80 |
| | |
| **Paul LaViolette** | |
| Certified Copy | $ 726.00 |
| | |
| **Gerard Llanos, 10/14/08** | |
| Certified Copy | $ 1,468.80 |

| **Deponent** | **Taxed Amount** |
|---|---|
| **Gerard Llanos, 10/15/08** | |
| Original & One | $   135.00 |
| Reporter Appearance | $     50.00 |
| **Gerard Llanos, 1/23/09** | |
| Original & One | $ 1,415.70 |
| Reporter Appearance | $   120.00 |
| **Joseph Lucci, 10/29/08** | |
| Original & One | $   772.50 |
| **Joseph Lucci, 10/30/08** | |
| Original & One | $ 1,695.00 |
| **Anthony Lunn, 12/11/08** | |
| Certified Copy | $   802.40 |
| **Anthony Lunn, 12/12/08** | |
| Certified Copy | $ 1,283.25 |
| **Andrew Marks** | |
| Certified Copy | $ 1,040.40 |
| **Dana Mead** | |
| Certified Copy | $   392.00 |
| Certification Fee | $       5.00 |
| **Antonios Mikos, 9/30/09** | |
| Certified Copy | $ 1,060.80 |
| **Antonios Mikos, 10/01/09** | |
| Certified Copy | $   516.80 |
| **Paul Miller, 2/27/09** | |
| Certified Copy | $   360.40 |
| **Paul Miller, 7/16/09** | |
| Certified Copy | $   234.90 |
| **Jeffrey Mirviss** | |
| Certified Copy | $   649.60 |

| **Deponent** | **Taxed Amount** |
|---|---|
| **Kay Myrdal** | |
| Certified Copy | $    480.00 |
| Certification Fee | $        5.00 |
| | |
| **Stephen Pacetti** | |
| Certified Copy | $    799.35 |
| | |
| **Ronald Rakos** | |
| Original & One | $    809.75 |
| Medical/Technical Surcharge | $      71.75 |
| Reporter Appearance | $      30.00 |
| | |
| **Campbell Rogers, 9/03/09** | |
| Certified Copy | $  1,390.60 |
| | |
| **Campbell Rogers, 1/11/10** | |
| Certified Copy | $      52.25 |
| | |
| **Mark Roller, 11/20/08** | |
| Original & One | $  1,299.55 |
| Medical/Technical Surcharge | $    115.15 |
| Late Pages | $      26.25 |
| Reporter Appearance | $      30.00 |
| | |
| **Mark Roller, 11/21/08** | |
| Original & One | $    948.00 |
| Medical/Technical Surcharge | $      84.00 |
| Reporter Appearance | $      30.00 |
| | |
| **David Sabitini** | |
| Certified Copy | $  1,305.60 |
| | |
| **Gary Schneiderman** | |
| Certified Copy | $    769.00 |
| Certification Fee | $        5.00 |
| | |
| **Lance Scott** | |
| Certified Copy | $    602.60 |
| Certification Fee | $        5.00 |
| | |
| **John Siekierka, 10/17/08** | |
| Certified Copy | $    914.60 |

| **Deponent** | | **Taxed Amount** |
|---|---|---|
| **John Siekierka, 2/27/09** | | |
| Original & One | $ | 535.35 |
| Medical/Technical Surcharge | $ | 46.55 |
| Reporter Appearance | $ | 30.00 |
| | | |
| **Sue Silavin** | | |
| Certified Copy | $ | 592.20 |
| Certification Fee | $ | 5.00 |
| | | |
| **Murthy Simhambhatla, 2/12/09** | | |
| Certified Copy | $ | 163.20 |
| Certification Fee | $ | 5.00 |
| Certified Copy | $ | 696.20 |
| Certification Fee | $ | 5.00 |
| | | |
| **Murthy Simhambhatla, 4/17/09** | | |
| Certified Copy | $ | 327.00 |
| Certification Fee | $ | 5.00 |
| | | |
| **Alistair Simpson, 6/04/09** | | |
| Certified  Copy | $ | 873.80 |
| | | |
| **Alistair Simpson, 6/05/09** | | |
| Original & One | $ | 990.00 |
| Reporter Appearance | $ | 95.00 |
| | | |
| **Eric Simso** | | |
| Certified Copy | $ | 527.35 |
| | | |
| **Jerauld Skotnicki** | | |
| Certified Copy | $ | 941.80 |
| | | |
| **Darren Snellgrove, 5/14/09** | | |
| Certified Copy | $ | 700.40 |
| | | |
| **Darren Snellgrove, 5/15/09** | | |
| Certified Copy | $ | 612.00 |
| | | |
| **Steve Spencer** | | |
| Certified Copy | $ | 292.90 |

23

| **Deponent** | | **Taxed Amount** |
|---|---|---|
| **Maurice Valla, 1/22/09** | | |
| Original & One | $ | 1,352.50 |
| Medical/Technical Surcharge | $ | 115.15 |
| | | |
| **Maurice Valla, 1/23/09** | | |
| Original & One | $ | 1,337.50 |
| Medical/Technical Surcharge | $ | 112.70 |
| | | |
| **Thomas Wandless** | | |
| Certified Copy | $ | 770.25 |
| Early Morning Pages | $ | 22.50 |
| | | |
| **Mark Williams** | | |
| Certified Copy | $ | 555.80 |
| Certification Fee | $ | 5.00 |
| | | |
| **Carol Wright, 1/28/09** | | |
| Certified Copy | $ | 819.40 |
| | | |
| **Carol Wright, 1/29/09** | | |
| Certified Copy | $ | 452.20 |
| | | |
| **Total:** | | **$67,451.09** |

Based upon the above, deposition transcripts are taxed in the total amount of **$67,451.09**, pursuant to § 1920 (2).

### C.   *Cost of Videotaped Depositions*

Under § 1920 (2), Abbott also requests the cost of videotaping most of the depositions for which it sought transcript fees.  After deducting $100 from the videotaping costs of the Llanos and Siekeirka depositions, withdrawn by Abbott, Defs.' Reply at 2, n.2, requested videotape charges total $42,377.61.

In opposition, Plaintiffs maintain that to the extent that the videotapes duplicate the printed transcripts, Defendants may not recover the costs of both the transcripts and the videotapes unless both formats were individually necessary for use in the case, citing Pharm.

24

Resources, Inc., 2008 WL 2951173, at *5.  Pls.' Br. at 7.  In that case, this Court denied the costs of videotapes which were not played for the court or used to decide the summary judgment motion or for any other purpose.

The Clerk notes that when § 1920 (2) was amended in 2008 to include electronically recorded transcripts, the conjunction "or" was inserted, not "and." As such, the Clerk generally does not allow recovery of the costs of both the printed transcripts and the videotapes in the absence of a showing that both were necessarily obtained for use in the case.  Warner Chilcott Labs. Ireland Ltd. v. Impax Labs., Inc., Civil Action Nos. 08-6304, 09-2073, 09-1233, 2013 WL 1876441, at *5-6 (D.N.J. Apr. 18, 2013); Merck Sharp & Dohme Pharm., SRL v. Teva Pharm. USA, Inc., Civ. A. No. 07-1596, 2010 WL 1381413, at *3 (D.N.J. Mar. 31, 2010) (citing Cherry v. Champion Int'l Corp., 186 F.3d 442 (4th Cir. 1999)).  Necessity for use at trial means more than for the convenience of the party or duplication.  Cherry, 186 F.3d at 449.

Defendants cite the Merck and Thabault cases for the proposition that in complex patent litigation, videotaped depositions should be taxed in addition to printed transcripts as reasonably necessary for the purpose of trial preparation.  Def.'s Reply at 4-5.  However, in addition to the fact that the Thabault case, 20-year long litigation, was much longer and more complex than this, both the Merck and Thabault cases were tried, not disposed of on summary judgment, and some of the videotapes were played at the trial.  Merck Sharp & Dohme Pharm., SRL, 2010 WL 1381413, at *3-4; Thabault, 2009 WL 69332, at *7, n.3.  Moreover, both cases pre-date the Supreme Court's admonition in the Taniguchi case to narrowly interpret the categories of costs set forth by Congress in § 1920.

As in the Pharm. Resources case, Abbott makes no showing whatsoever of the use of the videotapes which duplicate the printed transcripts, with the exception of two videotapes.

25

Abbott has failed to demonstrate the necessity of the videotapes independent of the printed transcripts. The two noted exceptions are for the videotaped depositions of Harold Hopfenberg and Joseph Weidermann. In lieu of, not in addition to, the cost of the printed transcripts, Abbott requests the cost of the videotapes, which are normally less expensive than the transcripts. Both were experts whose testimony was used in either Markman or summary judgment briefing. The Clerk grants these videotaping costs, exclusive of the costs of shipping, or $500 for the Hopfenberg and $440 for the Weidermann videotape, or total videotaping costs of **$940.00**.

Combining the granted costs of printed transcipts ($67,451.09) and videotaped depositions ($940.00)**,** costs taxed under § 1920 (2) total **$68,391.09**.[6]

**IV.**   **Fees for Exemplification and the Costs of Making Copies, § 1920 (4)**

The final costs sought by Abbott are those falling within subsection (4) of § 1920, covering "[f]ees for exemplification and the costs of making copies where the copies are necessarily obtained for use in the case." These requested costs, totaling $159,701.12, consist of: "costs for obtaining copies of prosecution file histories for the patents-in-suit ($1,867.50), appeal brief printing ($795.50), and for paper and electronic document production (including scanning,

---

[6]      In their sur-reply, Plaintiffs contend that the Clerk, as opposed to the Court, may not order the taxation of costs that do not fall squarely within the confines of our local court rules, citing the Thabault case. That is, only the Court may tax the cost of depositions which are not technically "used at the trial," as mandated by L. Civ. R. 54.1(g) (7). The Third Circuit has labeled the Clerk's act of taxing costs as "ministerial," In re Paoli, 221 F.3d at 453, and as such, the Clerk shies away from deciding the equitable factors addressed in that case, like unclean hands. However, Plaintiffs' argument in the extreme would prevent the Clerk from implementing the Third Circuit's decision in the Baby Food case and other case law, forcing litigants to appeal the Clerk's decision to the district court whenever the underlying case was dismissed prior to trial. The Clerk does not believe that such a result was intended by our Court's comment in Thabault that "the provisions of Local Rule 54.1(g) provide mandatory rules only for the Clerk," 2009 WL 69332, at *3.

OCR processing, converting file types, exporting production, copying (blowbacks), and Bates labeling ($157,038.12)." Defs.' Br. at 11 (footnote omitted).

Plaintiffs' position is that Defendants are entitled to no such fees, as they fail to meet the requirements of our local rule, L. Civ. R. 54.1(g) (9), which reads as follows:

> The fees for exemplification and copies of papers are taxable when (A) the documents are admitted into evidence or necessarily attached to a document required to be filed and served in support of a dispositive motion, and (B) they are in lieu of originals which are not introduced at the request of opposing counsel. The cost of copies submitted in lieu of originals because of convenience to offering counsel or his or her client is not taxable. The cost of copies obtained for counsel's own use is not taxable.

According to Plaintiffs, the cost of copies should not be taxed at all in this case because no documents were admitted into evidence as this case was not tried, nor were any dispositive motions filed herein. They were filed in the Delaware case only. Pls.' Br. at 10.

As discussed by the Clerk in his <u>Electrolux</u> opinion, 2013 WL 5817161, at *11, despite the specifications of L. Civ. R. 54.1(g) (9), this Court has required only satisfaction of the broader requirement of § 1920 (4) that copies have been "necessarily obtained for use in the case." The test of subsection (4) is satisfied if the copies were required to be filed with the court or provided to opposing counsel. <u>Id.</u> at 12. Copies may have been necessarily obtained under other circumstances as well, such as to prepare one's defense in the case. Conversely, general copying costs are not recoverable and neither are the costs of copies obtained merely for the convenience of counsel. As the prevailing party knows the purpose of its copies, it must demonstrate that the copies were necessarily obtained for a reimbursable use in the case. <u>See</u>, <u>e.g.</u>, <u>Awwad v. Largo Medical Center, Inc.</u>, No. 8:11-cv-1638-T-24 TBM, 2013 WL 6198856, at *5 (S.D. Fla. Nov. 27, 2013) (stating generally accepted principles governing the taxation of the cost of copies).

27

### A.   Copies of Prosecution File Histories of Patents-in-Suit

Defendants claim they are entitled to recoup the $1,867.50 cost of obtaining copies of the prosecution file histories of the patents-in-suit.  In support, they cite the case of MGM Well Servs., Inc. v. Mega Lift Sys., LLC, Civ. A. No. H-05-1634, 2007 U.S. Dist. LEXIS 42488, at *3 (S.D. Tex. June 12, 2007).

Plaintiffs respond that they produced the file histories to Abbott as part of their electronic document production and "[o]n information and belief, these file histories are also publicly available at no charge on the United States Patent and Trademark Office website."  Robinson Decl. ¶ 6.  Plaintiffs assert that "Abbott apparently made paper copies for the convenience of counsel, but the paper copies were neither admitted into evidence at trial nor used in a dispositive motion since no trial was held and no dispositive motions were filed."  Pls.' Br. at 11.

It does not appear to the Clerk that Abbott seeks the cost of paper copies of the prosecution file histories.  Instead, the invoice submitted by Abbott from the patent search company, Capitol Patent Service, Inc., lists charges for  "emailing/upload to website" for each of the four patents-in-suit.  [Dkt. Entry 151-5 at 54].

The case cited by Defendants, as well as others, indicates that the prevailing party in patent litigation is entitled to the cost of obtaining the prosecution file histories.  Bowling v. Hasbro, Inc., 582 F. Supp. 2d 192, 209-10 (D.R.I. 2008); Affymetrix, Inc. v. Multilyte Ltd., No. C 03-03779 WHA, 2005 WL 2072113, at *3 (N.D. Cal. Aug. 26, 2005); Vardon Golf Co. Inc. v. Karsten Mfg. Corp., No. 00 C 7221, 2001 WL 1117391, at *2 (N.D. Ill. Sept. 21, 2001). As stated in the Affymetrix case, "[f]or purposes of claim construction and assessing invalidity defenses, it was reasonably necessary for [the prevailing party] to obtain these government

documents."  2005 WL 2072113, at *3.  In that case, the court rejected the argument of the

losing party (patentee), made here, that the prevailing party (accused infringer) failed to

demonstrate that the documents were not otherwise available.  The court contrasted the position

of the accuser infringer with that of the patentee, who should have the copied documents in its

own files.  It held that "[e]ven if these files had been made available during discovery, [the

prevailing party] would have been entitled to recover at least the costs of copying them."  Id.

The prosecution file histories were necessary for Abbott to prepare the defense of its

case, and thus, the Clerk grants Defendants this **$1,867.50** cost.

### B.  *Cost of Amicus Appellate Briefing*

Abbott requests the $795.50 cost to reproduce the *amicus* brief which it submitted to the

Court of Appeals for the Federal Circuit in the appeal of the Delaware court's decision.  [Dkt.

Entry 151-5 at 53].

In addition to again arguing that these copies do not meet the requirements of our local

rule, as they were neither admitted into evidence nor submitted with a dispositive motion in this

case, Plaintiffs contend that Defendants' decision to file the brief was voluntary and therefore,

their costs are non-taxable.  Pls.' Br. at 11.  Defendants' response is that "despite Plaintiffs'

attempts to claim that the appeal was for another case, this Court's Judgment in favor of Abbott

and the timing of the costs requests were predicated on the Federal Circuit appeal."  Defs.' Reply

at 7.

Notwithstanding the above, the Clerk does not believe he has the authority to award the

costs of appellate briefing, which are governed by Fed. R. App. P. 39.  Rule 39 specifies that

certain costs are taxable in the Circuit Court pursuant to subsection (d) therein, and others may

be recovered in the district court pursuant to subsection (e).

Rule 39 provides in pertinent part:

**(d) Bill of Costs:  Objections; Insertion in Mandate.**

> **(1)** A party who wants costs taxed must—within 14 days after entry of judgment—file with the circuit clerk, with proof of service, an itemized and verified bill of costs . . .

**(e) Costs on Appeal Taxable in the District Court.**  The following costs on appeal are taxable in the district court for the benefit of the party entitled to costs under this rule:

(1) the preparation and transmission of the record;

(2) the reporter's transcript, if needed to determine the appeal;

(3) premiums paid for a supersedeas bond or other bond to preserve rights pending appeal; and

(4) the fee for filing the notice of appeal.

The costs which Abbott incurred in connection with its appellate briefs and appendices do not fall within the limited categories of Rule 39(e).  Subsection (c) of Rule 39 addresses the costs of copies of appellate briefs and appendices and  provides that each court of appeals, not the district court, should fix, by local rule, the maximum rate for taxing the cost of copies. Thus, in order for these costs to be taxed against the unsuccessful appellant, as contemplated in subsection (a) (2) of the Rule, the "party who wants costs taxed must – within 14 days after entry of judgment – file with the circuit clerk, with proof of service, an itemized and verified bill of costs" for the circuit clerk's insertion in the mandate.  Fed. R. App. P. 39(d) (1).

Therefore, application for appellate briefing costs in this patent case should have been made to the clerk of the Federal Circuit, not the district court.  See Sudouest Import Sales Corp. v. Union Carbide Corp., 102 F.R.D. 264 (D.P.R. 1984) (distinguishing between Rule 39(d) costs on the mandate and Rule 39(e) costs to be taxed by the district court because they are incurred

only at its level (citing 16AA Charles Alan Wright et al., Federal Practice and Procedure:

Jurisdiction § 3985 (4th ed. 2012))); 5 Am. Jur. 2d *Appellate Review* § 862 (2d ed. 2012) ("[t]he

cost of producing necessary copies of briefs, appendices, and copies of records authorized by

rule are taxable in the United States Court of Appeals at rates fixed by that court, . . .").

See e.g., Flitton v. Primary Residential Mortg. Inc., No. 2:03CV481DAK, 2009 WL 1743670

(D. Utah June 16, 2009) (reversing Clerk's granting of costs of appeal-related copies, which

should have been requested from the circuit court under Fed. R. App. P. 39).

Apparently, neither BSC nor Abbott filed a bill of costs with the clerk of the Federal

Circuit, as no costs were inserted on that court's mandate.  [Civ. No. 07-333, Dkt. Entry 374-1].

Accordingly, the Clerk denies this cost.

### C. Costs of Paper and Electronic Document Production

The last type of costs sought by Abbott, constituting roughly 50% of its bill of costs,

is that of document production, amounting to $157,038.12.  Defendants justify taxation as

follows:

> In defending this case, Abbott incurred significant expenses producing documents to
> Plaintiffs and analyzing Plaintiffs' millions of pages of production documents, but
> Abbott is seeking taxation of only a small fraction of these costs.  Plaintiffs themselves
> made certain demands regarding electronic production, specifying that "Abbott's
> production should include a Concordance.DAT file, an Opticon load file and the images
> should be single page TIFF." . . . Abbott complied with Plaintiffs' requests, and now
> Plaintiffs must pay for the processing that they required.  Courts have found that such
> requests regarding electronic production support the award of costs associated with
> such formatting.  *See, e.g., Race Tires Am., Inc. v. Hoosier Racing Tire Corp.,*
> No. 07-1294, 2011 U.S. Dist. LEXIS 48847, at *26-29 (W.D. Pa. May 6, 2001) . . . .

Defs.' Reply at 6.

In opposition, Plaintiffs reiterate their position that Abbott fails to meet the requirements

of L. Civ. R. 54.1(g) (9), and even setting aside our local rule, Defendants have not shown that

their document production was necessarily obtained for use in the case.  Pls.'s Br. at 11.

Plaintiffs break down the charges in Abbott's invoices to the following categories, all of which

are non-taxable in their view:  shipping, bates labeling and confidentiality endorsements, copying

(blowbacks), tabs, technical consultant, scanning, OCR and coding, file conversion, CD and

DVD creation and replication, and "unexplained expenses".  Id. at 13.  Plaintiffs explain why

each category of costs should be denied.  Id. at 13-19; Ex. 2.  Defendants counter that these costs

are either properly taxable or not costs that they sought.  Defs.' Reply at 6-7.

 To support their respective positions, the parties cite to opinions issued by district courts

in the Third and other circuits, including that of the Western District of Pennsylvania in the Race

Tires case, No. 2:07-cv-1294, 2011 WL 1748620 (W.D. Pa. May 6, 2011).  However, after their

briefing of this motion, the Third Circuit issued its definitive ruling in the appeal of  that case.

Race Tires Am., Inc. v. Hoosier Racing Tire Corp., 674 F.3d 158 (3rd Cir.), cert. denied,

133 S. Ct. 233 (2012).  The Clerk's decision that follows is dictated by that holding.

 In the ground-breaking Race Tires case, the Third Circuit established the parameters for

the taxation of the production of electronically stored information ("ESI") under § 1920 (4).

The parties agreed in that case to produce ESI in Tagged Image File Format ("TIFF"), an image

format whereby ESI is converted into a non-editable digital file, allowing for the endorsing of

pages and confidentiality branding.  The case management order required the Bates numbering

of each page and proper unitization of the documents, the production of metadata fields, and an

extracted text file or searchable version of every electronic document in a document level

text file.  674 F.3d at 161.

 The services performed by third-party electronic discovery vendors, of which costs were

sought, consisted of "(1) preservation and collection of ESI; (2) processing the collected ESI;

(3) keyword searching; (4) culling privileged material; (5) scanning and TIFF conversion; (6) optical character recognition ("OCR") conversion; and (7) conversion of racing videos from VHS format to DVD format."  Id. at 161-62.

The Third Circuit first determined that the vendors' services did not constitute "exemplification," as set forth in § 1920 (4), and then addressed which charges fell under the other category of § 1920 (4), "the cost of making copies".  The court reviewed the legislative history and relevant case law, and rejected arguments concerning the degree of technical expertise necessary to make the production which supported the district court's granting of the entire amounts charged.  Adopting a narrow reading of the statute, pursuant to the directive of the Supreme Court, it found that only the costs incurred for the physical preparation of ESI are taxable.  It observed that in the pre-digital era, none of the various steps which preceded the actual copying of documents, such as locating paper files, would have been taxed:

> It may be that extensive "processing" of ESI is essential to make a comprehensive and intelligible production.  Hard drives may need to be imaged, the imaged drives may need to be searched to identify relevant files, relevant files may need to be screened for privileged or otherwise protected information, file formats may need to be converted, and ultimately files may need to be transferred to different media for production.  But that does not mean that the services leading up to the actual production constitute "making copies."

Id. at 169.  The court reasoned, "And that is because Congress did not authorize taxation of charges necessarily incurred to discharge discovery obligations.  It allowed only for the taxation of the costs of making copies."  Id.  The court concluded that of the many services performed, only the costs of scanning hard copy documents, converting native files to the agreed-upon format, and transferring VHS tapes to DVD format were taxable.  Id. at 171.

Subsequent to the Third Circuit's decision, two other circuit courts, the Fourth and Federal Circuit (applying Eleventh Circuit law) ruled on similar issues.   First, the Fourth Circuit

33

issued an opinion faithful to the holding of the <u>Race Tires</u> case, finding the Third Circuit's reasoning "persuasive." <u>Country Vintner of N. Carolina v. E. & J. Gallo Winery, Inc.</u>, 718 F.3d 249 (4th Cir. 2013).  The Fourth Circuit granted only $218.59 of the $111,047.75 requested discovery costs, taxing just the costs of converting native files to TIFF and PDF formats and transferring files onto CDs.  In doing so, it denied the costs of:  flattening and indexing ESI; OCR; indexing data; removing system files; extracting metadata; unitizing electronic documents by locating breaks to facilitate reviewing, searching and production; creating an index of metadata; exporting and loading electronic documents and metadata onto a platform; Bates labeling; and managing the processing of ESI/quality control and preparing documents to produce to opposing counsel.  <u>Id.</u> at 252-53.

The Federal Circuit's decision followed in the case of <u>CBT Flint Partners, LLC v. Return Path, Inc.</u>, 737 F.3d 1320 (Fed. Cir. 2013).  There, the Federal Circuit went further than the Third and Fourth Circuits in finding that additional activities necessary to discharge discovery obligations were taxable.  Applying relevant Eleventh Circuit law, it held that "recoverable costs under section 1920 (4) are those costs necessary to duplicate an electronic document in as faithful and complete a manner as required by rule, by court order, by agreement of the parties, or otherwise."  <u>Id.</u> at 1328.  It apparently did not share the Third Circuit's view that "Congress did not authorize taxation of charges necessarily incurred to discharge discovery obligations." <u>Race Tires</u>, 674 F.3d at 169.  The Federal Circuit noted its divergence from the Third and Fourth Circuits when it taxed the costs of the initial stage of imaging source media and extracting documents in a way that preserves metadata, in addition to the costs taxed by its sister circuits. 737 F.3d at 1333.

The Race Tires ruling addressed most of the charges which Abbot requests.  However, in addition, it seeks the cost of paper copies, i.e., blowbacks, and Bates labeling, not specifically discussed in Race Tires.  As for the blowbacks, the Clerk agrees with Plaintiffs that Abbott has not shown how these paper copies served any purpose other than the convenience of counsel. Their use is unexplained.  They were not used as trial exhibits and document production was made electronically, as Abbott has indicated.  Defs.' Br. at 14-15.  Their costs are not taxed.

As for the costs of Bates labeling, the Clerk denies such charges based upon the ruling of the Country Vintner court, which found such costs non-taxable, in reliance upon the Race Tires holding.  See also Phillips v. Wellpoint Inc., No. 3:10-cv-00357-JPG-SCW., 2013 WL 2147560, at *6 (S.D. Ill. May 16, 2013) (citing Race Tires in support of finding that "applying a bates stamp number, creating an image load file, and creating a concordance-ready data load file are beyond the actual act of 'making copies' as allowed by the statute").  Even before Country Vintner, the Clerk denied this type of cost, which is a production step that is separate and apart from the act of making copies.  See Warner Chilcott Labs Ireland Ltd., 2013 WL 1716468, at *10 (citing Amana Society, Inc. v. Excel Eng'g, Inc., No. 10-CV-168-LRR, 2013 WL 427394, *5-7 (N.D. Iowa Feb. 4, 2013)).  See also, Aguiar v. Natbony, No. 09-60683-CIV, 2011 WL 4387180, at *2 (S.D. Fla. Sept. 20, 2011) (finding, prior to Race Tires, that Bates labeling is a convenience of counsel and not recoverable under § 1920).

Based upon the above, the Clerk denies the costs of:  undefined services (in the 10/31/07 Ikon invoice), tech time, freight, OCR, shipping/delivery, blowbacks, tabs, endorsing, assembly, branding, web repository charges (technician's time for creating an export, export, branding), creating custom blank placeholders, imaging, and document unitization.  Just the following costs, appearing in Dkt. Entry 151-5, Ex. C, are taxed:

| **Vendor** | **Invoice Date** | **Service** | **Amount** |
|---|---|---|---|
| Merrill Communications | 4/30/08 | CD/DVD/scanning | $ 5,185.76 |
| Merrill Communications | 5/30/08 | CD/DVD/scanning | $ 10,422.09 |
| Merrill Communications | 6/30/08 | CD/scanning | $ 136.96 |
| Merrill Communications | 6/30/08 | CD/scanning | $ 1,096.64 |
| Document Technologies, Inc. | 7/31/08 | scanning | $ 411.36 |
| Document Technologies, Inc. | 7/31/08 | scanning | $ 1,644.00 |
| Document Technologies, Inc. | 11/30/08 | scanning | $ 898.88 |
| Document Technologies, Inc. | 12/29/08 | scanning | $ 112.56 |
| Document Technologies, Inc. | 1/31/09 | scanning | $ 102.16 |
| Document Technologies, Inc. | 1/31/09 | scanning | $ 242.24 |
| Document Technologies, Inc. | 2/28/09 | scanning | $ 192.64 |
| Document Technologies, Inc. | 3/10/09 | PDF file conversion | $ 327.33 |
| Encore Discovery Solutions | 5/31/08 | convert PDFs to TIFF/CDs | $ 1,524.36 |
| Encore Discovery Solutions | 6/30/08 | convert PDFs to TIFF/CDs | $ 4,966.38 |
| Encore Discovery Solutions | 7/31/08 | native & PDFs to TIFF/CDs | $ 27,884.29 |
| Encore Discovery Solutions | 10/31/08 | native & PDFs to TIFF/CDs | $ 240.86 |
| Encore Discovery Solutions | 10/31/08 | TIFFing/TIFF conversion | $ 1,377.85 |
| **Total:** | | | **$ 56,766.36** |

Discovery costs are taxed in the total amount of **$ 56,766.36**.

The combined costs taxed pursuant to § 1920 (4) amount to **$58,633.86** ($1,867.50 + $56,766.36).

V.     __Summary__

In conclusion, the Clerk taxes the following costs in favor of Abbott and against

Plaintiffs:

Fees of the clerk and marshal, § 1920 (1):                     $      831.00

Fees for printed or electronically recorded transcripts, § 1920 (2):   $  68,391.09

Costs of making copies, § 1920 (4):                           $  58,633.86

**TOTAL:**                                                    **$127,855.95**

For the reasons set forth above, the motion of Defendants Abbott Laboratories

and Abbott Cardiovascular Systems Inc. to tax costs against Plaintiffs Wyeth and Cordis

Corporation is hereby **GRANTED IN PART AND DENIED IN PART**.  An appropriate order

follows.

By:  S/William T. Walsh
Clerk


Date: June 6, 2014